UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**TIFFANY and JEFFREY HADER,**

    Plaintiffs,

  v.                                      Case No. 24-CV-1463

**ERIE INSURANCE COMPANY,**

    Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Tiffany and Jeffrey Hader allege that their property was damaged during an April 19, 2023, hailstorm. The Haders insured their property with Erie Insurance Company. The Haders contend that Erie improperly denied their claim under the insurance policy. The Haders sued Erie for breach of contract, bad faith, and statutory interest under Wis. Stat. § 628.46.

Erie, pursuant to Fed. R. Civ. P. 12(c), moves for judgment on the pleadings as to the breach of contract claim on the grounds that the Haders failed to file their claim within the one-year limitations period found in Erie's insurance policy and under Wis. Stat. § 631.83(1). In opposing Erie's motion, the Haders argue that their suit is timely or alternatively, that Erie should be equitably estopped from invoking the one-year limitations period because Erie's conduct induced the Haders' delay. In so doing, the Haders cite to documents outside the pleadings. Thus, in its reply, Erie argues that its Rule 12(c) motion must be converted into a motion for summary judgment under Fed. R. Civ. P. 56.

For the reasons further explained below, Erie's motion for judgment on the pleadings as to the untimeliness of the Haders' filing is granted. However, the Haders' argument regarding equitable estoppel cannot be decided on the pleadings alone. Thus, I construe the Haders' response as a motion for summary judgment under Fed. R. Civ. P. 56 and will allow the parties to further brief this issue.

## BACKGROUND

Tiffany and Jeffrey Hader sued Erie on October 10, 2024, in Washington County Circuit Court. (Notice of Removal ¶ 1, Ex. A, Docket # 1-1.) The action was subsequently removed to federal court based on diversity jurisdiction. (*Id.* ¶ 3.)

In their complaint, the Haders allege that they owned property located at 1461 Falcon Drive in Hartford, Wisconsin, and at all times relevant, insured their property with Erie. (Compl. ¶¶ 3–4.) The Haders allege that on April 19, 2023, a significant hailstorm occurred that damaged their property. (*Id.* ¶¶ 6–7.) They assert that the damage sustained was and is covered by Erie's insurance policy and that they promptly submitted a claim for the damage to Erie and substantially complied with all other terms and conditions in the policy to obtain coverage for the damage. (*Id.* ¶¶ 8–9.) The Haders allege that Erie has failed to pay the claim in accordance with the policy and as a result of Erie's failure to pay the claim, they have sustained and will continue to sustain damages, including the costs associated with repairing the damage. (*Id.* ¶¶ 10–11.)

## APPLICABLE RULE

A motion for judgment on the pleadings under Rule 12(c) is granted "only if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support [her] claim for relief.'" *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th

Cir. 1998) (internal citations omitted). The moving party should be "clearly entitled to judgment." *Edmonds v. United States*, 148 F. Supp. 185, 186 (E.D. Wis. 1957). In order to succeed, "the moving party must demonstrate that there are no material issues of fact to be resolved." *Northern Indiana Gun & Outdoor Shows, Inc.*, 163 F.3d at 452. Further, the complaint must be construed in the manner most favorable to the nonmoving party. *Id.* (citing *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995)). A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is decided in the same manner as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Id.* In determining if the complaint is sufficient, the court looks only to the pleadings, which include "the complaint, the answer, and any written instruments attached as exhibits." *Id.* (internal citations omitted). Pursuant to Rule 12(d), if matters outside the pleadings are presented on a Rule 12(c) motion and are not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56 and the parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. Fed. R. Civ. P. 12(d).

## DISCUSSION

As an initial matter, Erie moves for judgment on the pleadings as to the Haders' breach of contract claim only (Docket # 15 at 3)—Erie does not dispute that the Haders' bad faith claim survives independent of the timeliness of the breach of contract claim (Docket # 19 at 12). *See Jones v. Secura Ins. Co.*, 2002 WI 11, ¶ 39, 249 Wis. 2d 623, 649, 638 N.W.2d 575, 588 (finding that insured was not barred from pursuing damages on bad faith claim despite the untimeliness of the breach of contract claim). Thus, as Erie did not move for judgment on the pleadings as to the bad faith claim, I will not address the Haders' arguments on this issue in Section III of their response brief. (Docket # 17 at 7–8.)

*1. Timeliness of Suit for Breach of Contract*

Erie argues that the Haders' loss occurred on April 19, 2023, but did not file suit against Erie until October 10, 2024—more than a year after the date of loss. (Docket # 15.) As such, Erie argues that the breach of contract action is untimely as a matter of law.

1.1     Relevant Limitations Period

At the heart of Erie's argument is the interplay between two sources providing a one-year limitations period. The first is Wis. Stat. § 631.83, which provides that an "action on a fire insurance policy must be commenced within 12 months after the inception of the loss." Wis. Stat. § 631.83(1). The parties do not dispute that Erie's policy constitutes a "fire insurance policy" under the statute. *See, e.g.*, *Villa Clement, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 120 Wis. 2d 140, 145, 353 N.W.2d 369, 371 (Ct. App. 1984) (finding that a "fire insurance policy" includes "indemnity insurance for losses to property caused by many other perils than fire"); *Borgen v. Econ. Preferred Ins. Co.*, 176 Wis. 2d 498, 501–503, 500 N.W.2d 419, 420–21 (Ct. App. 1993) (applying § 631.83(1) in circumstances involving loss due to hailstorm). Wisconsin law prohibits insurers from shortening this limitations period, *see* Wis. Stat. § 631.83(3)(a); however, it does not prevent insurers from lengthening it, *see Strauss v. Chubb Indem. Ins. Co.*, 771 F.3d 1026, 1034 (7th Cir. 2014) ("But this statute of limitations is not absolute; parties to an insurance contract are free to alter the length of a statute of limitations and the date that the limitation period begins to run.").

Second, is the language of Erie's policy itself. The insurance policy contains the following provision entitled "Lawsuits Against Us": "'We' may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within one year after

4

the loss or damage occurs." (Declaration of James Fredericks ¶ 3, Ex. 1, Docket # 16-1 at 22.)[1]

Although the statutory language and Erie's policy language are similar, they differ in one important way. Wisconsin statute provides that an action must be commenced within 12 months "<u>after the inception</u> of the loss," while Erie's policy provides that suit must be brought within one year "<u>after the loss or damage occurs</u>." Erie contends that these two phrases mean the same thing, arguing that Erie's policy language simply adopts the same one-year limitations period found in Wis. Stat. § 631.81(1). (Docket # 15 at 4.)

The Haders, in contrast, make a two-fold argument that their suit is timely filed. First, they argue that without the addition of the word "inception" in Erie's policy, the phrase "after the loss occurs" is ambiguous and under Wisconsin law, ambiguous policy provisions are construed in favor of coverage for the insured. (Docket # 17 at 3.) Second, the Haders argue that the phrase "after the loss" can mean various things, such as "injury, the occurrence of the fire insured against, or the date when the insurer's liability arose or the insured's cause of action accrued," (*id.* at 4 (quoting *Riteway Builders, Inc. v. First Nat. Ins. Co. of Am.*, 22 Wis. 2d 418, 422, 126 N.W.2d 24, 26 (1964)); thus, a reasonable interpretation of the phrase "after the loss occurs" is that the Haders had up to a year after Erie refused to pay the claim in which to file suit (*id.*).

---

[1] Although the Haders do not include a copy of Erie's insurance policy as an exhibit to their complaint, it is well-established that courts can consider documents attached to a motion for judgment on the pleadings without converting the motion into one for summary judgment if the document is referred to in the plaintiffs' complaint and is central to their claim *See Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013). Erie's insurance policy is referenced in the Haders' complaint and is clearly central to their claims, particularly their claim Erie breached said insurance contract.

### 1.2 Application to This Case

Starting first with the argument that Erie's policy language is ambiguous, it is clear that Wisconsin courts have "unequivocally defined" the statutory phrase "after the inception of the loss" to mean "the beginning of damage." *Strauss*, 771 F.3d at 1035. And while Erie argues that its policy language "after the loss" simply adopts the statutory limitations period found in Wis. Stat. § 631.81(1), the Seventh Circuit has concluded that "after a loss occurs" is "fundamentally different" than "after the inception" of a loss. *Id.* In *Strauss*, the plaintiffs sustained damage to their home when water infiltrated through a defect present since completion of construction. While the damage occurred between October 1994 and October 2005, it went undiscovered until 2010, after their insurance policy expired. *Id.* at 1028. Like the Erie policy at issue here, the *Strauss* policy contained a provision mandating that any action against the insurer be brought "within one year after a loss occurs." *Id.* at 1026. The insurer argued that the plaintiffs' suit was untimely under either the statutory deadline in Wis. Stat. § 631.83(1) or the time limit imposed by the policy. *Id.* at 1034.

The Seventh Circuit disagreed, concluding that by diverging from the statutory language, the insurer altered the limitation period for the plaintiffs to initiate suit. *Id.* While "inception" clearly refers to the beginning of a loss, "after a loss occurs" does not. *Id.* at 1034–35. Thus, in cases such as the plaintiffs' where the loss spanned over the course of multiple years, the court concluded that the language "after a loss occurs" was "ambiguous as applied to a progressive loss and can entirely reasonably be interpreted to mean after a loss completes." *Id.* at 1035. Thus, because "Wisconsin subscribes to the contract tenet that ambiguities are to be construed in favor of coverage for the insured," the court concluded that

6

plaintiffs could have brought their claim at any point up until a year after the water infiltration damage halted. *Id.*

The court of appeals faced a similar issue in *Wood v. Allstate Ins. Co.*, 21 F.3d 741 (7th Cir. 1994). In *Wood*, the plaintiff's house caught fire on January 29, 1991 and was not extinguished until January 30, 1991. *Id.* at 742. The policy at issue contained a provision providing that suit must be brought "within one year after the date of loss," and suit was filed on January 30, 1992—one year from the date that the fire was extinguished, but a year and a day from the date on which it began. *Id.* The court found that "date of loss" was ambiguous in this context because it was unclear whether the "date of loss" was the date the fire was extinguished or the date the fire was ignited. *Id.* at 744. Applying Indiana law, which provides that ambiguous insurance policies are interpreted in the light most favorable to the insured, the court concluded that the "date of loss" was the date on which the fire was extinguished. *Id.*

The Haders argue that Erie's policy language is ambiguous because it is unclear whether it means after the loss commenced or after the loss completed. (Docket # 17 at 3.) While that ambiguity may exist in cases of a progressive loss, in this case, there is no assertion that the damage occurred on any day other than April 19, 2023, the day of the "significant hailstorm." (Compl. ¶ 6.) In other words, whether the one-year limitations period began "after the loss" or "after the inception of the loss," the date is the same— April 19, 2023. There is no ambiguity here. And the Haders do not dispute that their action was filed more than one year after April 19, 2023. (Docket # 17 at 3.) Thus, it is untimely filed.

The Haders further argue that "after a loss" can also be interpreted to include the date the right to bring a cause of action exists. (*Id.* at 4.) Unlike the Haders' first argument, this

7

argument challenges how "loss or damage" is defined, arguing that an insurer's breach constitutes the "loss" or "damage" under the policy. As such, the Haders argue they could file suit up to a year after Erie breached the contract, stating that the date of breach is "the date of loss or damage." (*Id.* at 3–4.) The Haders provide no support for such a definition of "loss" or "damage." Erie's coverage for dwellings and other structures covers the "direct physical loss to property." (Docket # 16-1 at 12.) While Erie's policy does not further define "damage" or "loss," Wisconsin courts have generally found that an insured "suffers a physical 'loss' of its property when the property is 'destroyed' or affected to such an extent that it cannot be repaired" while physical damage "is harm to the tangible characteristics of the insured property that does not rise to the level of a physical loss." *Colectivo Coffee Roasters, Inc. v. Soc'y Ins.*, 2022 WI 36, ¶ 10, 401 Wis. 2d 660, 670–71, 974 N.W.2d 442, 447. It would make little sense for the Erie policy to define "loss" or "damage" to mean its own breach of the insuring agreement as opposed to the insured's property loss or damage sustained.

The Haders cite to *Riteway Builders, Inc. v. First Nat. Ins. Co. of Am.*, 22 Wis. 2d 418, 126 N.W.2d 24 (1964), in support of their interpretation. *Riteway* involved a dispute to recover damages caused by the November 14, 1957, collapse of a basement wall of the plaintiff's building. *Id.* at 420, 126 N.W.2d at 24. The policy included a provision stating that "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss." *Id.* at 421, 126 N.W.2d at 25. The plaintiff argued that this provision was limited only to fire and lightning claims. *Id.* at 422, 126 N.W.2d at 25.

8

In rejecting the plaintiff's construction of the contractual language, the court considered the history of fire policy language. Specifically, prior to use of a standard form in 1945, fire policies often contained a 12-month limitations period within which suit could be brought "after the loss." *Id.* The court noted that this phrase "after the loss" had been "variously interpreted to mean either injury, the occurrence of the fire insured against, or the date when insurer's liability arose or the insured's cause of action accrued." *Id.* Thus, when a standard form was implemented, it contained language stating that suit had to be brought "within 12 months next after the fire" in an attempt to "fix a definite and uniform time for the commencement of the period of limitations in all jurisdictions where the form was used." *Id.* The standard policy was subsequently amended again to change the clause from "next after the fire" to "next after inception of the loss." *Id.* at 422, 126 N.W.2d at 25–26. The court concluded that the language "commenced within twelve months next after inception of the loss," means "from the date of the damage suffered by the insured from any peril covered by the policy of insurance and is not restricted to the peril of fire and lightning." *Id.* at 423, 126 N.W.2d at 26.

Thus, while the court acknowledged that "after the loss" had been historically defined in several different ways, the court did not adopt any specific definition. Rather, the court cited to these various definitions to demonstrate the historical ambiguity with the phrase and how it was remedied with the "inception" language. *Riteway* does not support the Haders' definition of "loss" or "damage" equating to "the insurer's breach," nor does it assist in his timeliness argument addressed above. Again, the Haders' suit for breach of contract was untimely filed.

### 2. *Equitable Estoppel*

In response to Erie's motion, the Haders argue that even if their breach of contract claim is untimely, Erie should be equitably estopped from asserting its statute of limitations defense. (Docket # 17 at 4–6.) The test of whether a party should be estopped from asserting the statute of limitations is "whether the conduct and representations of the party against whom estoppel is sought were so unfair and misleading as to outbalance the public's interest in setting a limitation on bringing actions." *Wieting Funeral Home of Chilton, Inc. v. Meridian Mut. Ins. Co.*, 2004 WI App 218, ¶ 23, 277 Wis. 2d 274, 288–89, 690 N.W.2d 442, 449. Equitable estoppel requires that "the party asserting the statute of limitations engage in fraud or inequitable conduct and that the aggrieved party failed to commence an action within the statutory period because of reliance on the wrongful conduct." *Id.* Proof of estoppel must be clear, satisfactory, and convincing and cannot rest on mere inference or conjecture. *Id.*

In arguing Erie should be estopped from asserting its statute of limitations defense, Erie cites to multiple documents outside the pleadings, including reports regarding the damage sustained in the hailstorm, and communications between Erie and the Haders regarding denial of coverage and payments made. (Docket # 17 at 5–6.) The Haders argue that if their current pleadings "do not sufficiently state the basis for their allegedly untimely filing," they should be granted leave to amend their complaint to include further factual allegations. (*Id.* at 6.)

But amending the complaint would not serve to provide proof of estoppel by clear, satisfactory, and convincing evidence. Erie pled statute of limitations as an affirmative defense in its answer. (Docket # 1-3.) Because the Haders cite to documents outside of the pleadings, it appears they intend to move for summary judgment as to this affirmative defense. Thus,

10

pursuant to Fed. R. Civ. P. 12(d), the parties will be given the opportunity to present all materials pertinent to the Haders' summary judgment motion regarding equitable estoppel. The Haders will be given until **August 29, 2025**, to file any additional brief and materials in support of their motion. Erie will be given until **September 19, 2025**, to file its response materials. The Haders will be given until **October 3, 2025**, to file a reply.

The parties are reminded that the dispositive motions deadline passed on June 30, 2025. (Docket # 10.) I am not inviting further motions on additional issues not previously raised and will not entertain any such motions unless the moving party can demonstrate good cause for modifying the scheduling order pursuant to Fed. R. Civ. P. 16(b)(4).

## CONCLUSION

The Haders sue Erie for breach of contract, bad faith, and recovery of statutory interest based on Erie's alleged failure to pay a property damage claim the Haders allege is covered under their insurance policy. Erie moved for judgment on the pleadings as to the breach of contract claim on the grounds that the Haders' suit was untimely filed. While I determine, based on the pleadings alone, that the Haders' suit was untimely filed, the Haders argue Erie should be equitably estopped from enforcing this defense. Because the Haders cite to materials outside of the pleadings, I will convert the Haders' response into a motion for summary judgment. The parties will be given an abbreviated briefing schedule in which to present their evidence and arguments in support of this narrow issue.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Defendant's Motion for Judgment on the Pleadings (Docket # 14) is **GRANTED IN PART AND DENIED IN PART**. The Court finds as a matter of law that the Plaintiffs' suit is untimely filed. However, the Plaintiffs will

11

be given the opportunity to present their arguments and evidence supporting equitable estoppel.

Dated at Milwaukee, Wisconsin this 7th day of August, 2025.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge