UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIFFANY and JEFFREY HADER,

    Plaintiffs,

  v.                                                    Case No. 24-CV-1463

ERIE INSURANCE COMPANY,

    Defendant.

## DECISION AND ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Tiffany and Jeffrey Hader allege that their property was damaged during an April 19, 2023, hailstorm. The Haders insured their property with Erie Insurance Company. The Haders contend that Erie improperly denied their claim under the insurance policy. The Haders sued Erie for breach of contract, bad faith, and statutory interest under Wis. Stat. § 628.46.

Erie moved for judgment on the pleadings as to the breach of contract claim on the grounds that the Haders failed to file their claim within the one-year limitations period found in Erie's insurance policy and under Wis. Stat. § 631.83(1). In opposing Erie's motion, the Haders argued Erie should be equitably estopped from invoking the one-year limitations period because Erie's conduct induced the Haders' delay. In so doing, the Haders cited to documents outside the pleadings. Thus, in its reply brief, Erie argued that its Fed. R. Civ. P. 12(c) motion must be converted into a motion for summary judgment under Fed. R. Civ. P. 56.

In a decision and order dated August 7, 2025, I concluded that the Haders' suit was untimely filed as a matter of law. (Docket # 23.) However, because the Haders raised the issue of equitable estoppel and the issue could not be decided on the pleadings alone, I construed the Haders' response as a motion for summary judgment under Fed. R. Civ. P. 56 and allowed the parties to further brief the issue. The parties each filed briefs, affidavits, and proposed findings of fact in support of their positions. For the reasons further explained below, the Haders' motion for partial summary judgment is denied.

## CASE BACKGROUND

Tiffany and Jeffrey Hader sued Erie on October 10, 2024, in Washington County Circuit Court. (Notice of Removal ¶ 1, Ex. A, Docket # 1-1.) The action was subsequently removed to federal court based on diversity jurisdiction. (*Id.* ¶ 3.)

In their complaint, the Haders allege that they owned property located at 1461 Falcon Drive in Hartford, Wisconsin, and at all times relevant, insured their property with Erie. (Compl. ¶¶ 3–4.) The Haders allege that on April 19, 2023, a significant hailstorm occurred that damaged their property. (*Id.* ¶¶ 6–7.) They assert that the damage sustained was and is covered by Erie's insurance policy and that they promptly submitted a claim for the damage to Erie and substantially complied with all other terms and conditions in the policy to obtain coverage for the damage. (*Id.* ¶¶ 8–9.) The Haders allege that Erie has failed to pay the claim in accordance with the policy and as a result of Erie's failure to pay the claim, they have sustained and will continue to sustain damages, including the costs associated with repairing the damage. (*Id.* ¶¶ 10–11.)

Erie moved for judgment on the pleadings under Rule 12(c) on the grounds that the Haders' suit was untimely filed. (Docket # 14.) Erie's policy language requires suit to be

brought within one year "after the loss or damage occurs." (Docket # 23 at 5.) The Haders argued that Erie's policy language was ambiguous because it was unclear whether it meant after the loss commenced or after the loss completed. (*Id.* at 7.) I found that because there was no assertion that the damage occurred on any day other than April 19, 2023, whether the one-year limitations period began "after the loss" or "after the inception of the loss," the date was the same—April 19, 2023. (*Id.*) Thus, I concluded there was no ambiguity in this case and because the Haders did not dispute that their action was filed more than one year after April 19, 2023, the action was untimely as a matter of law. (*Id.*)

The Haders argue, however, that Erie should be equitably estopped from invoking the statute of limitations. Currently before me is the Haders' motion for partial summary judgment as to equitable estoppel.

## FACTS RELEVANT TO EQUITABLE ESTOPPEL

The Haders filed a hail damage claim with Erie on November 16, 2023. (Def.'s Additional Proposed Material Facts ("Def.'s Add. Facts") ¶ 1, Docket # 29 and Pls.' Resp. to Def.'s Add. Facts ("Pls.' Resp.") ¶ 1, Docket # 33.) Erie attempted to contact the Haders to discuss the claim on November 16 and 17, 2023, and spoke with them on November 20, 2023. (*Id.* ¶ 2.) That day, Erie and the Haders spoke via telephone regarding the alleged damage and water leaking in the Haders' upstairs bathroom. (*Id.* ¶ 3.) The Haders and Jack Podewils, Erie's field adjuster assigned to the case, agreed to schedule an inspection of the property on November 24, 2023. (*Id.* ¶ 4.) It is Erie's policy that adjusters cannot inspect roofs if they are two or more stories tall, as the Haders' property was, so Erie hired SeekNow to perform a solo inspection and to take photos of the Haders' roof. (*Id.* ¶ 5; Declaration of James Fredericks ("Fredericks Decl.") ¶ 21, Ex. 19, Deposition of Jack Podewils ("Podewils Dep.")

at 17–18, Docket # 31-19.) Podewils testified, however, that SeekNow is specifically hired "to obtain photos so [Erie] can make a determination and make our own assessment as an adjuster." (Podewils Dep. at 17.)

During the November 24, 2023, inspection, Podewils opined there was no hail damage to the front, rear, right side, or left side of the property. (Def.'s Add. Facts ¶ 6 and Pls.' Resp. ¶ 6.) Podewils found mechanical damage, not hail damage, to the garage door and water damage to the upstairs bathroom. (*Id.* ¶ 7.) SeekNow did not appear for this inspection. (*Id.* ¶ 8.) On December 6, 2023, Erie notified the Haders of its initial position that there was no hail damage to their siding and alerted them that SeekNow sought to schedule a solo inspection of the property. (*Id.* ¶ 9.) Also on December 6, Erie sent the Haders an estimate of the cost to repair the water damage in their bathroom. (*Id.* ¶ 10.) On December 27, 2023, Erie notified the Haders that SeekNow had attempted to reschedule an inspection with them and asked whether they were able to get in contact with them. (*Id.* ¶ 11.) On January 12, 2024, Erie notified the Haders that an inspection of their roof would be conducted as soon as weather permitted and advised them to protect their property from any further damage. (*Id.* ¶ 12.)

On January 31, 2024, James Carron from SeekNow went to the Haders' home and took photos of the roof. (*Id.* ¶ 13.) Carron uploaded those photographs to the SeekNow system, which then generated a report of the inspection. (*Id.* ¶ 14.) Carron noted ten hail hits on the east and west slopes of the roof. (July 1, 2025 Affidavit of Joshua M. Greatsinger ("July Greatsinger Aff.") ¶ 2, Ex. A, Deposition of James Carron ("Carron Dep.") at 19–20, Docket # 18-1.) On February 19, 2024, Erie reviewed SeekNow's photographs and opined there was no evidence of hail damage to the roof's shingles. (Def.'s Add. Facts ¶ 16 and Pls.' Resp.

4

¶ 16.) Erie concluded that any granule loss to the shingles was caused by wear and tear, deterioration, blistering, and thermal cracking. (*Id.* ¶ 17.) Erie discovered minor damage to the four box vents on the roof (*id.* ¶ 18) and spoke with the Haders on February 19, 2024, about the SeekNow photos, noting that it only observed small indentations to the aluminum box vents and stating that it would be assigning an expert engineer to review the claim further, (*id.* ¶ 19). Erie explained that SeekNow's only purpose was to obtain photos on steep or high roofs when the property is bi-level. (*Id.* ¶ 20.) Erie states that it did not share the SeekNow Report with the Haders because at that time it was privileged work product and contained inaccurate information. (*Id.* ¶ 21.) On February 21, 2024, Erie drafted an estimate of the Haders' damages, totaling $1,152.09, and sent the Haders the estimate on February 22, 2024. (*Id.* ¶¶ 22–23.)

On February 22, 2024, Erie notified the Haders that it hired RCL Engineering Group to conduct an inspection of the roof and siding and reiterated its position that any granule loss was caused by thermal cracking, blistering, and wear and tear, not hail. (*Id.* ¶ 24.) On March 5, 2024, an RCL engineer, Jonathan Quindt, inspected Plaintiffs' roof and siding. (*Id.* ¶ 25.) On March 21, 2024, RCL submitted its report to Erie, concluding that the roof had "suffered absolutely no hail impact damage" and that any marks on the roof were caused by granule erosion and weathering. (*Id.* ¶ 26.) The RCL Report affirmed that the roof's box vents sustained hail damage. (*Id.* ¶ 27.) On March 22, 2024, Erie sent the Haders a settlement check for $1,152.09 in accordance with the February 21, 2024, estimate. (*Id.* ¶ 28.)

On April 1, 2024, Erie sent the Haders the RCL Report and a letter partially denying their claim on the basis that the Policy did not cover (1) mechanical breakdown, deterioration, or wear and tear to the roof and (2) water damage caused by mold. (*Id.* ¶ 29.) The partial

5

denial letter noted that Erie had "completed" its investigation of the claim and would proceed with a partial payment of $7,729.80 for the metal siding, gutters, downspouts, and box vents; however, the Haders dispute that this letter served as Erie's final position on the matter. (*Id.* ¶ 30.) Erie's letter (1) quoted the Policy language supporting its conclusion; (2) cited the "LAWSUIT AGAINST US" provision that warned that suit must be brought "within one year after the loss or damage occurs;" (3) stated that Erie did not waive any rights under the Policy; and (4) instructed Plaintiffs on how to receive the replacement cost value of the damage. (*Id.* ¶ 31.)

On April 13, 2024, SeekNow took additional photos of the Haders' property to determine whether a match for the metal siding existed. (*Id.* ¶ 33.) On April 19, 2024, the Haders retained Miller Public Adjusters, LLC ("Miller") to represent them in their claim. (*Id.* ¶ 34.) Miller concluded that the Haders' roof and siding sustained hail damage and notified Erie of such findings. (*Id.* ¶ 35.) On April 30, 2024, RCL drafted a Supplemental Report to address some of Miller's concerns. (*Id.* ¶ 36.) In this Supplemental Report, RCL concluded that the siding did not sustain hail damage and that any repairs to certain metal components on the roof did not require replacement of the entire roof. (*Id.* ¶ 37.)

On May 15, 2024, Erie sent Miller the Supplemental Report. (*Id.* ¶ 38.) While Erie asserts that it also reaffirmed its initial position that there was no hail damage to the roof and siding, the Haders argue that Erie does not explicitly indicate this. (*Id.*) On May 30, 2024, Miller responded to Erie with a list of disagreements it had with the conclusions set forth in the Supplemental Report. (*Id.* ¶ 39.) On June 17, 2024, Erie reiterated to Miller that it was maintaining a position on damages aligned with RCL. (*Id.* ¶ 40.) On June 26, 2024, Erie provided Miller with RCL's responses to Miller's questions about the damage and again

6

stated that it had not changed its decision to deny coverage for the roof and siding. (*Id.* ¶ 41.) On July 26, 2024, Erie decided to hire RCL to reinspect the property to address Miller's supplemental concerns. (*Id.* ¶ 42.) On August 14, 2024, RCL reinspected the Haders' property. (*Id.* ¶ 43.) On September 9, 2024, RCL submitted its Reinspection Report to Miller, reaffirming its initial conclusion that the roof did not sustain hail damage. (*Id.* ¶ 44.)

## APPLICABLE RULE

Pursuant to Fed. R. Civ. P. 56(a), a party can seek summary judgment upon all or any part of a claim or defense asserted. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

7

"In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## DISCUSSION

The Haders do not dispute that this action was filed more than one year after the date of loss and thus is untimely. (Docket # 25 at 3.) They argue, however, that Wisconsin courts have long recognized that insurers may be estopped from invoking contractual or statutory limitations defenses. (*Id.*) The Haders contend that the court should apply equitable estoppel in this case to prevent Erie from asserting the statute of limitations as a defense to their breach of contract claim.

The doctrine of equitable estoppel can apply to insurance coverage. *Mercado v. Mitchell*, 83 Wis. 2d 17, 26–27, 264 N.W.2d 532, 537 (1978). "There are three elements to equitable estoppel: (1) Action or inaction which induces, (2) reliance by another, (3) to his detriment." *Id.*; *see also Milas v. Lab. Ass'n of Wisconsin, Inc.*, 214 Wis. 2d 1, 11–12, 571 N.W.2d 656, 660 (1997) ("The elements of equitable estoppel are: (1) action or non-action, (2) on the part of one against whom estoppel is asserted, (3) which induces reasonable reliance thereon by the other, either in action or non-action, and (4) which is to his or her detriment.").

The test of whether a party should be estopped from asserting the statute of limitations is "whether the conduct and representations of the party against whom estoppel is sought were so unfair and misleading as to outbalance the public's interest in setting a limitation on bringing actions." *Wieting Funeral Home of Chilton, Inc. v. Meridian Mut. Ins. Co.*, 2004 WI App 218, ¶ 23, 277 Wis. 2d 274, 288–89, 690 N.W.2d 442, 449. Equitable estoppel requires that

8

"the party asserting the statute of limitations engage in fraud or inequitable conduct and that the aggrieved party failed to commence an action within the statutory period because of reliance on the wrongful conduct." *Id.* Proof of estoppel must be clear, satisfactory, and convincing and cannot rest on mere inference or conjecture. *Id.*

The Haders argue that Erie should be equitably estopped from asserting its statute of limitations defense because Erie drew out the claims handling process until after the statute of limitations passed, inducing the Haders to delay filing suit by giving them "the reasonable impression that the claim was still under review and potentially payable." (Docket # 25 at 5; *see also* Docket # 32 at 7.) The Haders assert that not until September 17, 2024, after the statute of limitations period had already expired, did they understand that Erie would not change its coverage position, giving them "clarity on their legal position and the need to initiate litigation." (Docket # 25 at 5.)

As an initial matter, while the hailstorm occurred on April 19, 2023, the Haders contend that they did not observe signs of water intrusion until late 2023, thus they did not report their claim to Erie until November 16, 2023, nearly seven months after the date of loss. (Docket # 32 at 4–5.) While the Haders argue that they are not to blame for contributing to this delay and that they acted promptly once they became aware of the damage (*id.* at 5), they present no evidence that this delay was attributable to wrongful conduct by Erie. And the Haders should have been aware, given the language in their policy regarding the time limit for filing suit, that the clock had already started running. Wisconsin courts have rejected the notion that an insurer has a duty to advise its insured of the proper statute of limitations, stating that "litigants must inform themselves of applicable legal requirements and procedures" and that "[i]gnorance of one's rights does not suspend the operation of a statute

9

of limitations." *Johnson v. Johnson*, 179 Wis. 2d 574, 584, 508 N.W.2d 19, 23 (Ct. App. 1993) (internal quotation and citation omitted).

Furthermore, once Erie received notice of the Haders' claim, it acted promptly, assigning field adjuster Podewils to the case the same day. (Def.'s Add. Facts ¶¶ 1–2, 4 and Pls.' Resp. ¶¶ 1–2, 4.) While Podewils could not reach the Haders until November 20, he attempted to contact them on November 16 and 17. (*Id.* ¶ 2.) On November 20, Podewils scheduled an inspection of the property for November 24, and noted that SeekNow was assigned for "review of roof" as "insured indicated their home is 2-stories." (Fredericks Decl. ¶ 3, Ex. 1, Erie's Claim File Notes at 25, Docket # 31-1 at 25.) During the November 24, 2023, inspection, Podewils did not find any hail damage to the front, rear, right side, or left side of the property and found mechanical damage, not hail damage, to the garage door and water damage to the upstairs bathroom. (Def.'s Add. Facts ¶¶ 6–7 and Pls.' Resp. ¶¶ 6–7.)

Podewils indicated in his claim notes that he met with the Haders on December 1, 2023, as SeekNow was supposed to inspect the roof; however, SeekNow "did not make it to inspection." (Docket # 31-1 at 24.) Erie attempted to get the SeekNow inspection rescheduled and in the meantime, Podewils spoke with Tiffany Hader on December 6, 2023, and informed her of his initial findings that there was no hail damage to the siding. (*Id.* at 19.) Podewils further discussed an estimate for water damage to the bathroom ceiling amounting to $1,578.56. (*Id.* at 20.) Due to weather concerns, SeekNow did not inspect the roof until January 31, 2024. (Def.'s Add. Facts ¶¶ 12–13 and Pls.' Resp. ¶¶ 12–13.) SeekNow provided a report to Erie that included photographs of the Haders' roof, as well as notations indicating ten hail hits on the east and west slopes of the roof. (Greatsinger Aff. ¶ 3, Ex. B, Docket # 18-2; Carron Dep. at 19–20.)

Erie contends that it did not immediately provide the Haders with SeekNow's report because at the time it was privileged work product and contained inaccuracies (Def.'s Add. Facts ¶ 21 and Pls.' Resp. ¶ 21); however, Podewils spoke with the Haders on February 19, 2024, regarding the SeekNow photos, noting that Erie only observed small indentations to the aluminum box vents and stating that it would be assigning an expert engineer to review the claim further (*id.* ¶ 19). Erie also explained to the Haders that SeekNow's only purpose was to obtain photographs on steep or high roofs when the property is bi-level. (*Id.* ¶ 20.)

The Haders argue that Erie "reject[ed] its initial expert's opinion" in order to "buy a more favorable opinion," thus drawing out the claims process longer. (Docket # 25 at 6.) The Haders acknowledge, however, that they do not know Erie's rationale for "withholding" SeekNow's report. (Pls.' Resp. ¶ 21.) Again, proof of estoppel requires clear, satisfactory, and convincing evidence, it cannot rest on inference or conjecture. *Wieting Funeral Home of Chilton, Inc.*, 2004 WI App 218, ¶ 23. The Haders do not dispute that SeekNow was retained by Erie to take photographs of the roof, consistent with Erie's policy that its adjusters should not climb on roofs of buildings two-stories or higher. (Def.'s Add. Facts ¶ 20 and Pls.' Resp. ¶ 20). Nor do they dispute that this fact was communicated to them. (*Id.*) Podewils testified that while SeekNow provides photographs, Erie still makes its own assessment of the damages. (Podewils Dep. at 17.) In other words, SeekNow was not an "expert" Erie was relying on and then discarded to delay the claim. On the contrary, Erie's claim notes indicate that Podewils explained to the Haders that SeekNow was "out of our regulations as adjusters to go on" and "discussed engineer opinion would be an expert opinion." (Docket # 31-1 at 13.)

During this February 19 telephone call, Erie also informed the Haders of its position that there was damage to the box vents, but no damage to the shingles or siding. (*Id.*) Rather,

11

Erie informed the Haders that the photographs substantiated its position of granule loss, blistering, and thermal cracking and that it would be assigning RCL to look further. (*Id.*) Tiffany Hader responded that she was "exploring another avenue to take claim [sic]." (*Id.*) After RCL's inspection took place on March 5 and it submitted its report to Erie on March 21 opining that the roof sustained no hail damage, Erie promptly paid the Haders $1,152.09 in accordance with the February 21, 2024, estimate. (Def.'s Add. Facts ¶¶ 25–29 and Pls.' Resp. ¶¶ 25–29.)

Erie issued its partial denial letter on April 1, 2024. (Fredericks Decl. ¶ 11, Ex. 9, Docket # 31-9.) The Haders do not dispute that the plain language of the letter states that "We completed our investigation and are proceeding with a partial payment under your policy for North elevation of siding, gutters, downspouts, box vents" but determined that "coverage does not exist for Roof, Attic Mold, pursuant to the terms, limitations and conditions under your [Policy]." (Def.'s Add. Facts ¶ 30 and Pls.' Resp. ¶ 30; Docket # 31-9 at 6.) Nor do they dispute that the letter expressly cited to Erie's policy language regarding suit being filed within one year after the loss or damage occurs. (Def.'s Add. Facts ¶ 31 and Pls.' Resp. ¶ 31.)

They argue, however, that Erie's partial denial letter did not serve as Erie's final position on the matter, pointing to the fact that Erie continued to correspond with the Haders and their public adjuster after the statute of limitations expired, which "suggested the claim remained under investigation." (Docket # 25 at 2.) While Erie did correspond with the Haders and their public adjuster after the statute of limitations expired, this is because the Haders did not retain their own adjuster until the day the statute of limitations expired—April 19, 2024. (Def.'s Add. Facts ¶ 34 and Pls.' Resp. ¶ 34.) And while Erie continued to respond to the

concerns raised by the Haders' adjuster after the statute of limitations expired, this does not indicate either fraud or inequitable conduct. Importantly, for estoppel to apply, the allegedly fraudulent or inequitable acts relied on "must have occurred before the expiration of the limitation[s period]." *Johnson*, 179 Wis. 2d at 583, 508 N.W.2d at 22. Even considering these communications occurring after the statute of limitations expired, Erie never strayed from its original coverage position articulated prior to the expiration of the statute of limitations. (Def.'s Add. Facts ¶¶ 34–44 and Pls.' Resp. ¶¶ 34–44.)

For equitable estoppel to apply, the Haders cannot simply assert that they failed to timely file suit because they relied on Erie's conduct—they must show that they failed to timely file suit because they relied on Erie's *unfair or misleading* conduct. *See Wieting Funeral Home of Chilton, Inc.*, 2004 WI App 218, ¶ 23. And mere conjecture or inference is insufficient to demonstrate Erie engaged in wrongful conduct. *Id.* Rather, the proof must be clear, satisfactory, and convincing. *Id.*

Once again, the initial seven-month delay in reporting the Haders' claim cannot be attributed to Erie, and upon receiving notice of the claim, Erie began to act on it. Nor did Erie mislead the Haders as to its position on covered damages. As early as December 6, Erie informed the Haders of its initial findings that there was no hail damage to the siding. While SeekNow's inspection was delayed until the end of January, there is no indication that Erie was responsible for this delay. Upon reviewing SeekNow's photographs, Erie informed the Haders on February 19, 2024, that its position was that the aluminum box vents were damaged by hail, but that the siding and shingles were not. While Erie sought to confirm its findings with an engineer, after it did, Erie reiterated its position in its partial denial letter, received by the Haders prior to the statute of limitations expiring. Thus, even if Erie's prior

13

statements did not clearly inform the Haders of its position, the April 1, 2024, denial letter should have removed all doubt. Thus, based on the undisputed facts in this case, Erie's actions were not so unfair or misleading to estop it from asserting the statute of limitations as a defense to the Haders' breach of contract claim. The Haders' motion for partial summary judgment is denied.

## CONCLUSION

The Haders argue that Erie should be estopped from asserting its one-year statute of limitations defense based upon its conduct and representations to them after they reported their claim in November 2023. But for estoppel to apply, the Haders must demonstrate that Erie's conduct and representations were so unfair and misleading as to outbalance the public's interest in setting a limitations period for bringing actions. And this proof of estoppel must be clear, satisfactory, and convincing—it cannot rest on mere inference or conjecture. In this case, the undisputed facts are insufficient as a matter of law to raise an estoppel claim. For these reasons, the Haders' motion for partial summary judgment is denied.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Docket # 24) is **DENIED**. The clerk of court will contact the parties regarding further scheduling in this matter.

Dated at Milwaukee, Wisconsin this 19th day of December, 2025.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge

14

Case 2:24-cv-01463-NJ   Filed 12/19/25   Page 14 of 14   Document 34