TIFFANY HADER and JEFFREY HADER,

                                        Plaintiffs,

Case No.: 24-CV-1463

v.

ERIE INSURANCE COMPANY,

                                        Defendant.

## Plaintiffs' Pretrial Report

Pursuant to Fed. R. Civ. P. 26(a)(3), Civil L. R. 16(c)(1) and the Court's Trial Scheduling Order (Doc. 36) in the above matter, Plaintiffs Tiffany and Jeffrey Hader, by their attorneys, MGW Law, LLP, submit the following Pretrial Report:

**A.      Short Summary of the Facts, Claims and Defenses**

On or about April 19, 2023, a storm produced damaging hail on and around the Haders' residence in Hartford, Wisconsin. In the months that followed, the Haders discovered hail damage to their home and submitted a claim to their insurer. Erie assigned an adjuster Jack Podewils to inspect the Haders' siding and related components and outsourced the roof inspection to James Carron at SeekNow. Mr. Podewils did not find storm damage on the various exterior elevations; however, Mr. Carron reported ten or more hail hits on each slope of the roof, which he believes warranted its replacement.

Despite Mr. Carron's opinion, Erie denied that there was hail damage to the Haders' roof and instead characterized Mr. Carron's opinions as being that one of several excluded perils caused the damage. Erie prepared an estimate to replace four turtle vents on the Haders' roof which was below the deductible.

The Haders obtained opinions from a contractor and a public adjuster in an effort to compel Erie to revisit its position on the claim. Erie agreed to re-evaluate the claim and hired a registered roof observer Jonathan Quindt to perform a second inspection. Mr. Quindt and his firm are often called in to assist insurance companies in these sorts of inspections. Mr. Quindt did find hail damage siding on the north elevation of the home but determined that similar damage on other elevations was the result of non-descript "mechanical" impacts. Mr. Quindt concluded there was no hail damage to the roof. Erie never attempted to reconcile these differing expert opinions. Instead, it adopted the one more favorable to its coverage position.

In addition, both of Erie's experts admitted that their inspection was limited to "functional" hail damage to the roof. In other words, Mr. Carron and Mr. Quindt searched for bruises or fractures of the shingles that impaired the water-shedding function of the roof. Both of Erie's experts disregarded non-functional or cosmetic hail damage, such as blemishes or localized granule loss. There is no provision in the contract which limits coverage in this matter. Erie's consideration of dents to metal components of the roof and refusal to consider similar impacts to the shingles has no support in the contract or the law. Erie's supervisor Daniel Schultz admitted this was Erie's practice and that there was no language in the insurance contract to support it.

The Haders filed this lawsuit against Erie alleging breach of contract, bad faith and a claim for interest under Wis. Stat. § 628.46 as a result of Erie's partial denial of their insurance claim. The Court dismissed the breach of contract claim as untimely. However, a breach of contract must still be established as part of the bad faith claim and the unpaid damages are recoverable in the bad faith claim. The Haders have an estimate from their public adjuster in the amount of $69,290.42 to repair the hail damage to their home. To date, Erie has assessed the value of the claim at $10,034.33.

2

### B. Statement of the Issues

1. Did Erie exercise bad faith in the handling of the Haders' insurance claim?

2. If so, what damages are attributable to Erie's bad faith?

3. Did Erie intentionally disregarded the Haders' rights under their insurance contract?

4. If so, are punitive damages appropriate?

The Court should determine whether and to what extent it will make findings on certain bad faith damages such as attorney fees, litigation costs, and interest so those items are not presented to and argued before the jury if not necessary.

### C. Names and Addresses of All Witnesses Expected to Testify

1. Tiffany & Jeffrey Hader
   1461 Falcon Dr
   Hartford, WI 53027

2. Gary & Melissa Wickey
   1522 Redtail Dr
   Hartford, WI 53027
   (262) 224-9001

3. Jim & Jody Sedlachek
   1464 Redtail Dr
   Hartford, WI 53027

4. Sam Ifft
   Miller Public Adjusters
   600 S Nicolet Rd, Ste A
   Appleton, WI 54914
   (920) 393-9089

5. James Carron
   SeekNow
   Port Washington, WI

6. Jeremy Spuhler
   H&S Roofing, LLC
   1639 State Rd 83
   Hartford, WI 53027
   (262) 224-3554

3

7. Daniel Schultz
Erie Insurance Company

In addition, Plaintiffs may call additional witnesses from Miller Public Adjusters including David Miller, Jonathan Larson and Mitch Gerhartz if necessary to supplement testimony about inspections of the Haders' property or authenticate documents; an authorized representative of H&S Roofing, LLC if necessary to supplement testimony about inspections of the Haders' property or authenticate documents; and an authorized representative of Erie or its vendors or experts in this matter if necessary to supplement testimony about inspections of the Haders' property or authenticate documents.

**D.      Statement of Background of All Expert Witnesses**

1.      Jeremy Spuhler is an owner of H&S Roofing, a licensed contractor located in Hartland, Wisconsin. He also holds certifications as an Owens Corning Preferred Contractor and CertainTeed Shingle Master. He inspected the Haders' property, identified hail damage, and made recommendations on the means and methods to repair hail damage including the removal of damaged roof vents and the repairability of the shingles.

2.      Sam Ifft is a licensed public adjuster and former insurance adjuster and holds several certifications in his field, including CPCU, SPPA, and AIC. He inspected the Haders' property, identified hail damage, and prepared an estimate to repair those damages.

**E.      List of Exhibits**

See attached.

**F.      Designation of All Depositions or Portions of Transcripts or Other Recordings of Depositions to be Read into the Record or Played at Trial as Substantive Evidence**

Plaintiffs do not anticipate reading any depositions into the record as substantive evidence. However, to the extent one or more of Erie's witnesses are not available for trial or we are unable to

4

procure their attendance by subpoena, we designate the following depositions and pages to be read into the record:

- James Carron, pages 1-30

- Daniel Schultz, pages 1-22

**G.      Estimate of Time Needed to Try the Case**

We estimate it will take three to four days to complete this trial.

**H.      If Scheduled for a Jury Trial:**

      **i.      Proposed Voir Dire Questions**

1.      Do any of you work for an insurance company or have a friend or relative who works for an insurance company?

2.      Do any of you work for an insurance agency or have a friend or relative who works for an insurance agency?

3.      An insurance company is required to pay each claim fairly and completely in accordance with the terms of the insurance policy. Do any of you have an issue with policyholders, like the Haders, availing themselves of their legal rights and filing suit when they believe the insurance company has not fairly and completely paid their claim?

4.      Have any of you had any experience, good or bad, with an insurance company?

      a.      Describe the experience.

      b.      Would you prior experience with the insurance company keep you from being fair and impartial in this case?

5.      Have any of you been a party to or a witness in a breach of contract lawsuit?

      a.      Insurance claim?

      b.      When?

      c.      Who involved?

      d.      Role in lawsuit?

      e.      Outcome?

6.      Do any of you believe lawsuits like the Haders result in higher premiums?

7.      Have any of you completed jury duty before?

      a.      If so, was it a criminal or civil case?

      b.      If so, were you the foreman of the jury?

8.      The damage to the Haders' home occurred as a result of an April 19, 2023 hailstorm. Do any of you know about the hailstorm or have any familiarity with the hailstorm?

10.      Do any of you have training as a registered roof consultant or engineer or have a friend or relative who has training as a registered roof consultant or engineer? If so, explain.

11.      Do any of you have legal training (attorney, paralegal, or legal assistant) or have a friend or relative with legal training? If so, explain.

12.      Do any of you have familiarity with any of the parties or the witnesses in this matter? If so, describe the familiarity.

      **ii.**      **Proposed Instructions on Substantive Issues**

| | |
|---|---|
| Wis JI – Civil 200 | Burden of Proof: Ordinary |
| Wis JI – Civil 202 | Burden of Proof: Compensatory Damages |
| Wis JI – Civil 205 | Burden of Proof: Middle |
| Wis JI – Civil 1707.1 | Punitive Damages: Nonproducts Liability |
| Wis JI – Civil 2761 | Bad Faith by Insurance Company: Assured's Claim |
| Wis JI – Civil 3044 | Implied Duty of Good Faith (Performance of Contract) |
| Wis JI – Civil 3053 | Breach of Contract |
| Wis JI – Civil 3710 | Consequential Damages for Breach of Contract |

6

### iii.       Proposed Verdict Form

Question 1: What is the total cost to repair damage to Tiffany and Jeffrey Hader's home caused by an April 19, 2023 storm?

$_____

Question 2: Did Erie Insurance Company exercise bad faith in its handling of Tiffany and Jeffrey Haders' claim?

_____ (Yes / No)

Question 3: If and only if you answer Question 2, "Yes", answer this question: What sum of money will fairly and adequately compensate Tiffany and Jeffrey Hader for Erie Insurance Company's bad faith, including:

(a) Cost of Repairs                              $_____

(b) Attorney Fees                              $_____

(c) Litigation Costs                              $_____

(d) Interest on Overdue Claim Payments      $_____

(e) Public Adjuster Fees                       $_____

(f) Other: _____                          $_____

Question 4: Did Erie Insurance Company intentionally disregard the rights of Tiffany and Jeffrey Hader?

_____ (Yes / No)

Question 5: If an only if you answered Question 4, "Yes", answer this question: What sum of money do you award to Tiffany and Jeffrey Hader and against Erie Insurance Company as punitive damages?

$_____

Dated this 20th day of April, 2026.

MGW LAW, LLP

By: _____/s/ Joshua M. Greatsinger_____
        Joshua M. Greatsinger, SBN: 1094313
        Attorneys for Plaintiffs Tiffany and Jeffrey Hader

Mailing Address
1425 Memorial Drive
Manitowoc, WI 54220
(920) 683-5800 Telephone
(800) 465-1031 Facsimile
jgreatsinger@mgwlawwi.com